IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEXIS HERNANDEZ AVILEZ,<br>Plaintiff,<br>v.<br>WILLIAM P. BARR, et al.,<br>Defendants. | Case No. 19-cv-08296-CRB<br><br>ORDER GRANTING WRIT OF HABEAS CORPUS |

Lexis Hernandez Avilez petitions for a writ of habeas corpus on the grounds that she is entitled to a bond hearing under 8 U.S.C. § 1226(a) or under the Fifth Amendment's due process clause. Pet. (dkt. 1) ¶ 100. The petition is GRANTED under 8 U.S.C. § 1226(a).

I.  **BACKGROUND**

Avilez is a native and citizen of Mexico. Id ¶ 9; Resp. Return ( dkt. 35) at 1. She was brought to the United States as an infant, became a legal permanent resident in 2000, and has lived in this country ever since. Pet. ¶ 2; Resp. Return at 1.

In 2005, Avilez was convicted of assault and sentenced to sixteen years in prison. Pet. ¶ 20. After her release, Avilez was transferred directly to ICE custody at Yuba County Jail. Id. ¶¶ 2, 21. On March 8, 2019, an immigration judge denied her application for relief under the Convention Against Torture and ordered her removed to Mexico. Id. ¶ 34. The Board of Immigration Appeals ("BIA") affirmed and entered a final order of removal. Id. ¶ 37. Avilez then filed a petition for review ("PFR") with the Ninth Circuit. Id. ¶ 38. That petition remains

pending. Resp. Return at 2. The Ninth Circuit has stayed Avilez's removal pending resolution of her PFR. Pet. ¶ 39. Avilez has been in ICE custody since her release from prison in November 2018. Pet. ¶ 21; Resp. Return at 1.

Avilez was assigned male at birth. Pet. ¶ 16. While in ICE custody, Avilez realized she was a transgender woman and was diagnosed with gender dysphoria by Yuba's medical staff. Id. ¶ 21–22. Subsequently, ICE transferred Avilez to the Praireville Detention Center ("PDC"), a civil immigration detention facility in Texas, so that she could receive treatment for gender dysphoria. Resp. Return at 2. The parties agree that Avilez is now receiving treatment at PDC. Pet. Traverse (dkt. 36) at 9; Resp. Return at 2. In November of 2019, Avilez filed a motion to re-open removal proceedings on the basis of her transgender status. Pet. ¶ 40. That motion remains pending. Resp. Return at 2.

Avilez filed the instant habeas petition on December 19, 2019. See generally Pet. After ICE transferred her to PDC, Avilez filed a motion for a temporary restraining order asking the Court to order ICE to provide her "medically necessary hormone treatment," and either release her or transfer her back to Yuba. See Motion for TRO (dkt. 13-2) at 24. She also asked the Court to order the Immigration Court to hold a bond hearing. Id. The Court denied the TRO on the grounds that ICE was taking steps to provide Avilez with appropriate treatment and the Court lacked jurisdiction over claims based on where Avilez was detained. Order Denying TRO (dkt. 31) at 7. Because the arguments about Avilez's entitlement to a bond hearing formed the basis of the instant habeas petition, which the parties had agreed to brief on a "far more relaxed schedule," the Court did not consider those arguments in connection with the TRO. Id. at 7–8. Avilez's petition for writ of habeas corpus asks the Court to either order her release[1] or

---

[1] In her latest briefing, Avilez does not argue that this court should release her. She now focuses on her request for a bond hearing. See generally Pet. Traverse. In her petition, she claimed that she should be released because ICE violated her substantive due process rights when it refused to

2

alternatively, order her released within fifteen days unless the government conducts a bond hearing. Pet. ¶ 100.

## II. LEGAL FRAMEWORK

A writ of habeas corpus may be issued when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). 8 U.S.C. § 1226 governs the detention of noncitizens during removal proceedings. See Jennings v. Rodriguez, 138 S. Ct. 830, 837 (2018). Section 1226(a) gives the attorney general the discretion to detain noncitizens during removal proceedings. See id. at 846. But under § 1226(c) the Attorney General must detain a noncitizen who has committed certain crimes until "the conclusion of removal proceedings." Id.

## III. DISCUSSION

Avilez argues that she is entitled to a bond hearing under Ninth Circuit precedent interpreting the interaction of 8 U.S.C. § 1226(a) and § 1226(c). Pet. Traverse at 13–14 (citing Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942 (9th Cir. 2008)). The Court agrees and holds that Avilez is entitled to a bond hearing as a matter of law.

### A. Entitlement to a Bond Hearing Under Ninth Circuit Precedent

Avilez argues that under Casas she is automatically entitled to a bond hearing. Pet. Traverse at 13 (citing 535 F.3d 942). Casas held that where a detainee is subject to § 1226(c) mandatory detention, § 1226(c) only authorizes detention until the BIA issues a final removal order. See Casas, 535 F.3d at 948. Once the BIA issues a final order, and the detainee decides to

---

provide gender affirming care. Pet. ¶¶ 81–84. Because Avilez now says she is receiving gender affirming care, the Court denies this claim and only considers whether Avilez is entitled to a bond hearing. See id.

3

seek judicial review, the authority for detention switches to § 1226(a), which allows for discretionary rather than mandatory detention. Id. Because § 1226(a)'s discretionary grant of authority could allow for "the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk" which would be "constitutionally doubtful," Casas held that "§ 1226(a) must be construed as <u>requiring</u> the Attorney General to provide the alien with . . . a hearing." Id. at 951 (emphasis in original). Thus, under Casas even if a detainee was originally subject to mandatory detention under § 1226(c), once removal proceedings conclude and the detainee seeks judicial review before the Ninth Circuit, she becomes a § 1226(a) detainee who is automatically entitled to a bond hearing. See id. at 948–951.

There is no dispute that Avilez was initially detained under § 1226(c) because of her aggravated felony conviction, which requires detention during removal proceedings. See 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(iii). But Avilez argues that as a detainee subject to a final order of removal, she is now detained under § 1226(a), which entitles her to a bond hearing as a matter of law. Pet. Traverse at 13–14; see Casas, 535 F.3d at 948, 951.

The government does not dispute that Casas requires this result. Instead, it argues that Casas's holding does not survive the Supreme Court's decision in Jennings. Resp. Return at 4–5. Neither the Ninth Circuit nor the Supreme Court has considered this issue, so unless Casas is "clearly irreconcilable" with Jennings the Court must apply Casas. Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003).

In Jennings, the Supreme Court held that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope <u>must</u> continue 'pending a decision on whether the alien is to be removed from the United States.'" 138 S. Ct. at 846 (quoting 8 U.S.C. § 1226(a)). The government interprets this language to mean that § 1226(c) detention must last until all legal proceedings regarding removal, <u>including judicial review</u>, are complete. Resp. Return at 5 (citing

4

id.). As a result, the government contends that Casas's holding, which relies on the distinction between the time a detainee spends waiting for a removal order and the time she spends awaiting judicial review, is "clearly irreconcilable" with Jennings, which collapses this distinction. Resp. Return at 5–6. This argument is unconvincing.

The language the government cites from Jennings does not foreclose Casas's holding that the authority for detention switches from § 1226(c) to § 1226(a) once a final removal order is issued. See 138 S. Ct. at 846. One could reasonably interpret the language "together with § 1226(a), § 1226(c)" to mean that the two statutory sections work together to ensure that a noncitizen remains in custody pending judicial review of a final order of removal, because § 1226(c) applies before the order of removal becomes final, and § 1226(a) applies after the order of removal becomes final. See id. This interpretation is consistent with the holding in Casas. See 535 F.3d at 948.

Because there is a reasonable interpretation of Jennings that leaves Casas intact, the Court remains bound by the Ninth Circuit's decision in Casas. See Fed. Trade Comm'n v. Consumer Def., LLC, 926 F.3d 1208, 1213 (9th Cir. 2019) (quoting Rodriguez v. AT&T Mobility Servs. LLC, 728 F.3d 975, 979 (9th Cir. 2013)) ("[W]e have emphasized that the 'clearly irreconcilable' requirement is a 'high standard.' We explained that if we can apply our precedent consistently with that of the higher authority, we must do so.") (internal citations omitted). Therefore, the Court will apply Casas. Accordingly, Avilez's detention is authorized under § 1226(a), which requires a bond hearing. See Casas, 535 F.3d at 948, 951.

//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is GRANTED. Within fifteen days of the filing of this Order, Petitioner must be provided with a bond hearing before an immigration judge.

**IT IS SO ORDERED.**

Dated: April 8, 2020



CHARLES R. BREYER
United States District Judge